UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-CIV-81145-BLOOM/Valle

NATIONWIDE INSURANCE COMPANY
OF AMERICA, an Ohio corporation,

      Plaintiff,

vs.

RICHARD CALABRESE and DARWIN
LOPEZ,

      Defendants.
_____/

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**THIS MATTER** is before the Court upon the Motion for Summary Judgment, ECF No.
[33] (the "Motion"), filed by Plaintiff Nationwide Insurance Company of America ("Plaintiff" or
"Nationwide"). The Court has reviewed the Motion, all supporting and opposing filings and
submissions, and the record in the case. For the reasons that follow, Plaintiff's Motion for
Summary Judgment is **DENIED**.

I. MATERIAL FACTS

Through this action, Nationwide seeks a declaration that it has no duty to defend or
indemnify Defendant Richard Calabrese ("Calabrese") in an underlying state court negligence
action brought by Defendant Darwin Lopez ("Lopez") against Calabrese.

Nationwide issued a Commercial General Liability Insurance Policy (the "Policy") to
Calabrese for the time period (the "Policy Period") of January 11, 2012 to January 11, 2013. *See*
ECF No. [34] (Pl. Stat. Facts) ¶ 1; ECF No. [34-1] (copy of the Policy) at 1. The named insureds
on the Policy are Calabrese, Florida Caterers and Calabrese Investments LLC. Policy at 4. The

business of the named insured as set forth in the Policy is catering, and the business address is 522 West Lantana Road, Lantana, Florida 33462-1626.  Pl. Stat. Facts ¶ 2; Policy at 1.  The commercial general liability schedule in the Policy lists the catering business and that same address as the location and description of hazards.  Pl. Stat. Facts ¶ 2; Policy at 3.  During the Policy Period, the catering business at 522 West Lantana Road was owned and operated by Calabrese d/b/a Florida Caterers.  Pl. Stat. Facts ¶ 6; ECF No. [37-3] (Calabrese Dep. Tr.) at 47-48, 78-79, 86.  The property itself at 522 West Lantana Road (the "Commercial Property") was owned by Calabrese Investments, LLC.  Pl. Stat. Facts ¶ 7; Calabrese Dep. Tr. at 87.

In the section titled "Who Is An Insured," the Policy provides, in relevant part, as follows:

> If you are designated in the Declarations as . . . .[a]n individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner . . . [or a] limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business.  Your managers are insureds, but only with respect to their duties as your managers."

Policy at 16, § II(1)(a), (c).  That section further provides that:

> No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

Policy at 17, § II(3).  With respect to coverage of bodily injury and property damage, the Policy provides, in relevant part, that:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

Policy at 8, § I(1)(a).  "Coverage territory" is defined to include "[t]he United States of America (including its territories and possessions), Puerto Rico and Canada."  Policy at 20; § V(4).

2

On March 26, 2012, 519 Minnesota Street, LLC, a Florida limited liability company in which Calabrese is a member, purchased the residential property located at 519 Minnesota Street, Lantana, Florida 33462 (the "Residential Property") for $50,000. Pl. Stat. Facts ¶ 10; ECF No. [35-1] (Property Deed); Calabrese Drp. Tr. at 27, 34-36, 44. Neither Calabrese nor any of his affiliated companies owned or had any interest in the Residential Property when coverage under the Policy started, on January 11, 2012. Pl. Stat. Facts ¶ 9; Calabrese Dep. Tr. at 85-88. The Residential Property, located in close or immediate proximity to the Commercial Property, consists of a three bedroom house and three small residential apartments. Pl. Stat. Facts ¶ 16; Calabrese Dep. Tr. at 34, 37. At the time of its purchase by 519 Minnesota Street, LLC, the Residential Property (except for one apartment) was uninhabitable, and carried $20,000 of code violations. Pl. Stat. Facts ¶ 16; Calabrese Dep. Tr. at 36-37. At the time 519 Minnesota Street, LLC purchased the Residential Property, the intention was to repair, renovate and rent the property out for residential purposes. Pl. Stat. Facts ¶ 17; Calabrese Dep. Tr. at 44, 46.

On April 5, 2012, while working at the Residential Property, Lopez fell and sustained an injury. Pl. Stat Facts ¶ 14; ECF No. [37-1] (Lopez Dep. Tr.) at 36-42. For three to four weeks prior to that date, Lopez worked for Calabrese at the Residential Property, removing carpets or rugs damaged by water, moving furniture, removing ceiling and insulation, loading debris into a dumpster, priming and painting walls, and cleaning one of the apartments. Pl. Stat. Facts ¶ 27; Lopez. Dep. Tr. at 30-31. Lopez had previously worked for Calabrese on roof and driveway repair at the Commercial Property. Def. Stat. Facts ¶¶ 38, 39, 39A; Lopez Dep. Tr. at 22-25, 41-42. Lopez alleges that on April 5, 2012, Calabrese instructed him to ascend to the roof of the Residential Property to install a plywood plank over a hole in the roof.[1] Pl. Stat Facts ¶ 14;

---

[1] Central to the Underlying Action but not to this Motion, Calabrese denies that he ever requested or directed Lopez to go onto the roof.

Lopez Dep. Tr. at 36-42.  Lopez fell through the roof and sustained a fractured vertebra, as well as other injuries.  *Id*.  Lopez alleges that Calabrese was negligent in failing to maintain his premises in a reasonably safe condition for business invitees and in failing to warn Lopez of a known dangerous condition.  Pl. Stat. Facts ¶ 14; ECF No. [35-2] (Complaint in the Underlying Action) ¶¶ 13-15.

Calabrese testified that, while Lopez was never paid for his work on April 5, "if he got paid that day, he would have got paid with a check from Florida Caterers."  Calabrese Dep. Tr. at 66.  However, Calabrese has no records of payment made to Lopez for work Lopez performed for the catering business or on the Residential Property.  Pl. Stat. Facts ¶¶ 32-34; Calabrese Dep. Tr. 23.

According to a zoning official from the City of Lantana, Florida, David Thatcher, the Commercial property is zoned C1 Commercial.  Pl. Stat. Facts ¶ 11; ECF No. [37-2] (Thatcher Dep. Tr.) at 6.  Operation of a catering business at that location is permissible.  *Id*.  The Residential Property is zoned R15 residential.  Pl. Stat. Facts ¶ 12; Thatcher Dep. Tr. at 8-9.  Operation of a catering business is not a permitted use of the Residential Property.  *Id*.  Neither is it permissible to use the Residential Property for the storage of goods, parking, or other business purposes permitted at the Commercial Property.  Pl. Stat. Facts ¶ 12; Thatcher Dep. Tr. at 9.  At all times relevant to the instant Motion, 519 Minnesota Street, LLC did not hold any occupational licenses in order to operate a commercial business at the Residential Property.  Pl. Stat. facts ¶ 18; Calabrese Dep. Tr. at 48.  Florida Caterers had an occupational license to operate a catering business at the Commercial Property.  *Id*.

Lopez concedes that Calabrese was not operating Florida Caterers out of the Residential Property.[2] Pl. Stat. Facts ¶ 23; Calabrese Dep. Tr. at 69.  However, based on his and Calabrese's deposition testimony, Lopez maintains that Calabrese and his catering company used the Residential Property as a storage facility.  ECF No. [41] (Def. Stat. Facts) ¶¶ 14, 25.  Calabrese testified that the Residential Property was "used for storage until construction started for the catering:  For paper goods; for boxes of plates; boxes of cups; anything that I couldn't store in the 522 building because they didn't have enough room . . . Extra surplus stuff would go there." Calabrese Dep. Tr. at 64.  He explained that "because of the condition of [the Residential Property], it was not going to be able to be rented until construction was complete.  So since I was the owner, I felt I had no reason why I couldn't put some of the stock that . . . Florida Caterers owned in there for storage."  *Id.* at 65.  He continued, "I was not operating my business out of [the Residential Property], I only put some supplies that I didn't have room for there . . . in an empty apartment for storage."  *Id.* at 68-69.  Calabrese expressed concern regarding bugs and leaks as to the supplies stored at the Residential Property.  *Id.* at 64, 68.  Lopez testified that, at Calabrese's instruction, he moved or removed catering equipment stored at the Residential Property both within the Residential Property and between the Commercial Property and the Residential Property.  Def. Stat. Facts ¶¶ 14, 25A, 25C, 25D, 25J, 25K, 25L.

On April 10, 2013, Lopez filed suit against Calabrese in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida (the "Underlying Action").  *See* Complaint in the Underlying Action.  Nationwide is defending Calabrese in the Underlying Action.  Pl. Stat. Facts ¶ 13.

---

[2] Those facts not controverted or opposed by Lopez are deemed admitted to the extent the Court finds them supported by evidence in the record.  *See* S.D. Fla. L. R. Civ. P. 56.1(b).

## II. SUMMARY JUDGMENT STANDARD

A party may obtain summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citation to the record, including *inter alia*, depositions, documents, affidavits, or declarations. Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48). The Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in its favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006); *Howard v. Steris Corp.*, 550 F. App'x 748, 750 (11th Cir. 2013) ("The court must view all evidence most favorably toward the nonmoving party, and all justifiable inferences are to be drawn in the nonmoving party's favor.").

"[T]he court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied." *Carlin Commc'n, Inc. v. Southern Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986); *see also Aurich v. Sanchez*, 2011 WL 5838233, at *1 (S.D. Fla. Nov. 21, 2011) ("If a reasonable fact finder could draw more than one inference from the facts, and that inference creates an issue of material fact, then the court must not grant summary judgment." (citing *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913 (11th Cir. 1993)). In particular, summary judgment is inappropriate where the Court would be required to weigh conflicting renditions of material fact or determine witness credibility. *See Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 919 (11th Cir. 1993) (noting

a court must not weigh conflicting evidence nor make credibility determinations when ruling on a motion for summary judgment); *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) ("It is not the court's role to weigh conflicting evidence or to make credibility determinations; the non-movant's evidence is to be accepted for purposes of summary judgment."); *Gary v. Modena*, 2006 WL 3741364, at *16 (11th Cir. Dec. 21, 2006) (Rule 56 precludes summary judgment where court would be required to reconcile conflicting testimony or assess witness credibility); *Ramirez v. Nicholas*, 2013 WL 5596114, at *4 (S.D. Fla. Oct. 11, 2013) ("The Court may not make the credibility determinations needed to resolve this conflict; only the jury may do so.").

The moving party shoulders the initial burden of showing the absence of a genuine issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once this burden is satisfied, "the nonmoving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in his favor. *Shiver*, 549 F.3d at 1343. But even where an opposing party neglects to submit any alleged material facts in controversy, the court must still be satisfied that all the evidence on the record supports the uncontroverted material facts that the movant has proposed before granting summary judgment. *Reese v. Herbert*, 527 F.3d 1253, 1268-69, 1272 (11th Cir. 2008); *United States v. One Piece of Real Prop. Located at 5800 S.W. 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1103 n.6 (11th Cir. 2004).

## III. ANALYSIS

Resolution of this Motion turns on one issue:  whether Lopez was performing work at the Residential Property on the day of his injury with respect to or in furtherance of the catering business.  Because facts remain in dispute as to that issue, summary judgment must be denied.

### A.    Purpose of the Policy and Scope of Nationwide's Duties to Defend and Indemnify

The primary purpose of a commercial general liability insurance policy, such as the one Nationwide issued to Calabrese here, is to protect businesses "from third-party liability incurred as a result of that company's business operations."  *JB Recycling Group, Inc. v. Landmark American ins. Co*., 2012 WL 3516490, at *5 (S.D. Fla. Aug. 15, 2012) (citing, *Colony Ins. Co. v. Montecito Renaissance, Inc*., 2011 WL 4529948, *1n.1 (M.D. Fla. Sep. 30, 2011) and *Key Custom Homes, Inc. v. Mid-Continent Cas. Co.*, 450 F. Supp. 2d 1311, 1317 (M.D. Fla. 2006)).

An insurer's duty to defend arises from the insurance contract and policy.  *See Allstate Ins. Co. v. RJT Enters., Inc.*, 692 So. 2d 142, 144 (Fla. 1997) ("[I]f there is no contractual duty to defend in the parties' contract then there is no duty to defend.").  That is, an insurer's duties towards its insured arise from the legal effects of the relevant policy provisions.  *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Brown*, 787 F. Supp. 1424, 1427 (S.D. Fla. 1991).  Therefore, summary judgment may be "appropriate in declaratory judgment actions seeking a declaration of coverage when the insurer's duty, if any, rests solely on the applicability of the insurance policy, the construction and effect of which is a matter of law."  *Northland Cas. Co. v. HBE Corp*., 160 F. Supp. 2d 1348, 1358 (M.D. Fla. 2001) (citing *Talat Enters., Inc. v. Aetna Life & Cas*., 952 F. Supp. 773 (M.D. Fla. 1996)).  "An insurer's duty to indemnify is narrower than its duty to defend and must be determined by analyzing the policy coverages in light of the actual facts in the underlying case."  *Sinni v. Scottsdale Insurance Co.*, 676 F. Supp. 2d 1319, 1323 (M.D. Fla.

2010) (citing *State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So. 2d 1072, 1077 (Fla. 2005) and *Hagen v. Aetna Cas. & Sur. Co.*, 675 So. 2d 963, 965 (Fla. 5th DCA 1996)).

> **B.      Construction of an Insurance Policy**

"Under Florida law, an insurance policy is treated like a contract, and therefore ordinary contract principles govern the interpretation and construction of such a policy."   *Pacific Employers Ins. Co. v. Wausau Business Ins. Co.*, 2007 WL 2900452, at *4 (M.D. Fla. Oct. 2, 2007) (citing *Graber v. Clarendon Nat'l Ins. Co.*, 819 So. 2d 840, 842 (Fla. 4th DCA 2002)).  As with all contracts, the interpretation of an insurance contract – including determining whether an insurance provision is ambiguous – is a question of law to be determined by the Court.  *See Amer. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007) ("Interpreting provisions in insurance contracts . . . involves questions of law."); *Travelers Indem. Ins. Co. of Illinois v. Hutson*, 847 So. 2d 1113 (Fla. 1st Dist.Ct.App.2003) (stating that whether an ambiguity exists in a contract is a matter of law).

Further, "[u]nder Florida law, insurance contracts are construed according to their plain meaning."  *Garcia v. Federal Ins. Co.*, 473 F.3d 1131, 1135 (11th Cir. 2006) (quoting *Taurus Holdings, Inc. v. United States Fidelity & Guaranty Co.*, 913 So. 2d 528, 532 (Fla. 2005)); *see also Tropabest Foods, Inc. v. State, Department of General Servs.*, 493 So. 2d 50, 51-52 (Fla. 1st DCA 1986) ("Words in an instrument should be given their natural or most commonly understood meaning.").  The "terms of an insurance policy should be taken and understood in their ordinary sense and the policy should receive a reasonable, practical and sensible interpretation consistent with the intent of the parties."  *Siegle v. Progressive Consumers Ins. Co.*, 819 So. 2d 732, 736 (Fla. 2002); *see also Gilmore v. St. Paul Fire & Marine Ins.*, 708 So. 2d 679, 680 (Fla. 1st DCA 1998) ("The language of a policy should be read in common with

other policy provisions to accomplish the intent of the parties.").  However, if there is more than one reasonable interpretation of an insurance policy, "such ambiguities are construed against the insurer and in favor of coverage."  *Id.* (quoting *Taurus*, 913 So. 2d at 532 ("An ambiguous provision is construed in favor of the insured and strictly against the drafter.")).

### C.        Scope of Liability Under the Policy

Nationwide argues that, because the work Lopez was performing at the Residential Property "had nothing to do with the catering business," but rather, was part of Calabrese's separate interests in renovating the Residential Property, it has no duty to defend or indemnify Calabrese in the Underlying Action.

The Policy explicitly circumscribes its definition of an insured to exclude otherwise covered individuals and LLC members when not acting "with respect to the conduct of [their] business."  That business, here, was Calabrese's catering business.  The parties do not suggest that this language in the Policy is ambiguous.  Indeed, courts in and outside Florida have found the phrase "with respect to the conduct of a business" facially unambiguous.  *See Nova Cas. Co. v. Anderson*, 2005 WL 3336496, at *3 (M.D. Fla. Dec. 8, 2005).  However, "[t]he phrase 'conduct of business' requires a focus on the purported insured's activity in determining whether the conduct of the business owner was business or personal."  *Id.*

Nationwide highlights that Calabrese did not operate his catering business out of the Residential Property, which was not owned by Calabrese or any of his associated entities when the Policy went into effect.  In fact, doing so would have been in violation of local zoning ordinances.  However, Lopez maintains – based on supportive deposition testimony – that Calabrese utilized the Residential Property as a temporary storage location for supplies owned and used by his catering business.  Lopez testified that he was tasked with transporting those

supplies within the Residential Property and between that property and the Commercial Property. He argues further that his work repairing the roof of the Residential Property – the work which allegedly led to his injuries – served the catering business by ensuring that the supplies were well maintained, in light of Calabrese's concern for possible water and infestation damage at the Residential Property.  Lopez also points to Calabrese's testimony that Lopez was to be paid for his work on the date of his injury by Florida Caterers.  Nationwide may have had no intention at the Policy's onset of extending coverage specifically to the Residential Property, but the Policy covers third party liability – to the extent the circumstances involve a covered insured – anywhere in the country.

Whether Lopez performed work on the date in question with respect to the conduct of Calabrese's catering business – an issue not only material but critical to this action – is subject to a genuine factual dispute.  Essentially, Nationwide says he didn't, and Lopez said he did.  This factual issue, in part, devolves into an assessment of witness credibility – a task particularly inappropriate when considering summary judgment.  *See Gary v. Modena*, 2006 WL 3741364 at *16; *Hairston*, 9 F.3d at 919; *Mize*, 93 F.3d at 742; *Ramirez v. Nicholas*, 2013 WL 5596114 at *4.  Because Nationwide cannot eliminate the possibility that coverage exists under the Policy with respect to the Underlying Action, the Court cannot determine on summary judgment that Nationwide bears no duty to defend or indemnify Calabrese with respect to that action and its attendant circumstances.  Summary judgment is, therefore, denied.

<u>**IV. CONCLUSION**</u>

For the foregoing reasons, it is hereby **ORDERED and ADJUDGED** that Plaintiff's

Motion for Summary Judgment, ECF No. [33], is **DENIED**.


**DONE and ORDERED** in Fort Lauderdale, Florida, this 15th day of December , 2014.


_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:
Counsel of Record