**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 13-CIV-81145-BLOOM/Valle**

NATIONWIDE INSURANCE COMPANY
OF AMERICA, an Ohio corporation,

      Plaintiff,

v.

RICHARD CALABRESE, DARWIN
LOPEZ, 522 LANTANA ROAD, L.L.C. and
519 MINNESOTA STREET, L.L.C.,

      Defendants.

_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

    **THIS MATTER** came before the Court for non-jury trial on March 18, 2015. Plaintiff Nationwide Insurance Company of America's ("Plaintiff" or "Nationwide") seeks a judgment that it has no duty to defend or indemnify Defendant Richard Calabrese ("Calabrese") in an underlying state court negligence action brought by Defendant Darwin Lopez ("Lopez") against Calabrese. Based on the evidence presented, including witness testimony, documentary submissions and photographic exhibits; all other evidence in the record, including the designated portions of the deposition transcripts; the parties' pretrial stipulations of fact; the argument of counsel; and otherwise being duly advised, the Court issues these findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

## I.  PROCEDURAL BACKGROUND

    Nationwide initiated suit against Calabrese and Lopez on November 6, 2013, ECF No. [1] (the "Complaint"), and amended its complaint to add Defendants 522 Lantana Road, LLC and 519 Minnesota Street, LLC (the "LLC Defendants") on January 9, 2015.  Joinder of the LLC

Defendants was prompted by Lopez's amendment of his complaint in the underlying state court action which gave rise to this insurance coverage declaratory action. *See* ECF No. [42-1] (amended state court complaint). Because all parties whose interests will be affected by a declaration must be joined in order to have a final binding declaratory judgment, Nationwide was permitted to amend its Complaint to add the LLC Defendants. *See* ECF No. [50] (the "Order Granting Leave to Amend") at 1-2. The LLC Defendants were consensually defaulted on February 26, 2015. ECF No. [72].

On December 15, 2014, the Court denied Nationwide's motion for summary judgment. ECF No. [44] (the "Order Denying Summary Judgment"); *Nationwide Ins. Co. of Am. v. Calabrese*, 2014 WL 7185467 (S.D. Fla. Dec. 16, 2014). Familiarity with that order is assumed. Therein, the Court concluded that a genuine issue of material fact existed precluding summary judgment for Nationwide:

> Whether Lopez performed work on the date in question with respect to the conduct of Calabrese's catering business – an issue not only material but critical to this action – is subject to a genuine factual dispute. Essentially, Nationwide says he didn't, and Lopez said he did. This factual issue, in part, devolves into an assessment of witness credibility – a task particularly inappropriate when considering summary judgment. Because Nationwide cannot eliminate the possibility that coverage exists under the Policy with respect to the Underlying Action, the Court cannot determine on summary judgment that Nationwide bears no duty to defend or indemnify Calabrese with respect to that action and its attendant circumstances. Summary judgment is, therefore, denied.

Order Denying Summary Judgment at 11 (citations omitted). A bench trial was held to determine this narrow factual issue.

## II. FINDINGS OF FACTS

Nationwide issued a Commercial General Liability Insurance Policy (the "Policy") to Calabrese for the time period (the "Policy Period") of January 11, 2012 to January 11, 2013. *See* ECF No. [83-1] (Plaintiff's Exhibit 1). The named insureds on the Policy are Calabrese, Florida

Caterers and Calabrese Investments LLC.  The business of the named insured as set forth in the Policy is catering, and the business address is 522 West Lantana Road, Lantana, Florida 33462-1626.  The commercial general liability schedule in the Policy lists the catering business and that same address as the location and description of hazards.  The schedule further reflects that the premium basis is $90,000.00 in gross sales for the catering business (translating into a $388.00 advance premium) and square footage of the building or premises at 522 West Lantana Road of 2,116 square feet (translating into a $391.00 advance premium).  The premium for the Policy was based on gross sales associated with the catering business and the square footage of the Commercial Property, as well as other related factors (such as, for example, proximity of the Commercial Property to a fire station).

During the Policy Period, the catering business at 522 West Lantana Road was owned and operated by Calabrese d/b/a Florida Caterers.  The property itself at 522 West Lantana Road (the "Commercial Property") was owned by Calabrese Investments, LLC.  By and on April 5, 2012, the Commercial Property was owned by 522 Lantana Road, LLC.

In the section titled "Who Is An Insured," the Policy provides, in relevant part, as follows:

> If you are designated in the Declarations as . . . [a]n individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner . . . [or a] limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business.  Your managers are insureds, but only with respect to their duties as your managers."

Policy at 16, § II(1)(a), (c).  That section further provides that:

> No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

Policy at 17, § II(3).  With respect to coverage of bodily injury and property damage, the Policy provides, in relevant part, that:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

Policy at 8, § I(1)(a).  "Coverage territory" is defined to include "[t]he United States of America (including its territories and possessions), Puerto Rico and Canada."  Policy at 20, § V(4).

On March 26, 2012, Defendant 519 Minnesota Street, LLC, a Florida limited liability company in which Calabrese is an owner and/or member (along with his brother), purchased the residential property located at 519 Minnesota Street, Lantana, Florida 33462 (the "Residential Property") for $50,000.  The Residential Property, located in close or immediate proximity to the Commercial Property, consists of a three bedroom house and three small residential apartments.  Neither Calabrese nor any of his affiliated companies owned or had any interest in the Residential Property when the Policy was incepted, on January 11, 2012.

At the time of its purchase by 519 Minnesota Street, LLC, the Residential Property (except for one apartment) was not inhabited, and carried $20,000 of code violations.  The intention at purchase was either to demolish the structures and sell the property; repair, renovate and rent the units on the property out for residential purposes; or repair, renovate and sell the residential property.  Both the house and the apartments required significant contracting and cosmetic work.  As an example, at some point, the ceiling in the house on the Residential Property was removed and it was determined that the roof on the house required significant repair.

4

According to a zoning official from the City of Lantana, Florida, David Thatcher, the Commercial property is zoned C1 Commercial. Operation of a catering business at that location is permissible. The Residential Property is zoned R15 residential. Operation of a catering business is not a permitted use of the Residential Property. Neither is it permissible to use the Residential Property for the storage of goods, parking, or other business purposes permitted at the Commercial Property. 519 Minnesota Street, LLC did not hold any occupational licenses in order to operate a commercial business at the Residential Property. Florida Caterers had an occupational license to operate a catering business at the Commercial Property.

Calabrese was not operating Florida Caterers out of the Residential Property. However, and regardless of the possible zoning ordinance violations, the Residential Property was used by the catering business for storage and parking purposes. At some point prior to April 5, 2012, Calabrese and an employee moved property of the catering business from a rented storage facility to the apartments on the Residential Property. That stock and product included chafing and warming trays, food containers, a mobile deep fryer, a refrigerator, degreasing equipment, oil containers, soda cans and bottles, paper goods such as plates and logoed napkins, and business receipts. In addition, employees of Florida Caterers also used (and continues to use) the Residential Property to park personal and commercial vehicles.

During the three to four weeks prior to April 5, 2012, Lopez worked for Calabrese at the Residential Property conducting repairs and renovations, including removing carpets or rugs damaged by water, moving furniture, removing ceiling and insulation, loading debris into a dumpster, priming and painting walls, and cleaning the house and apartments. During that time, Lopez typically began work without first reporting to Calabrese and with a certain amount of discretion as to task priorities. Lopez had previously worked for Calabrese in several capacities

after the two became acquainted through Lopez's employ at Calabrese's condominium building. Lopez had performed contracting work which does not require licensing, such as grouting and tiling the bathroom in Calabrese's condominium, and other odd jobs, such as car washing, for Calabrese at his residence and in a personal capacity.   Lopez had also performed roof and driveway repair – including roof paper and asphalt installation and aluminum roof coating – for the catering business at the Commercial Property.   Lopez had also washed Calabrese' commercial vehicle, including while parked at the Residential Property.

During the week leading up to April 5, 2012, at Calabrese's instruction, Lopez relocated some of the catering company's products stored at one of the apartments on the Residential Property to the house on the Residential Property for storage there.  This was part and parcel of Lopez's work in renovating and repairing the apartments in order to prepare them to be rented. Because certain areas of the house were either exposed to the elements or at risk of such exposure due to infirmities in the roof, Lopez placed the relocated property for storage in places not subject to damage (such as by water, mold or vermin).

Lopez arrived to work at the Residential Property at 9:30 a.m. on April 5, 2012. Calabrese then approached Lopez with a Spanish-speaking female employee.  Acting through her translation, Calabrese expressed his displeasure at Lopez's late arrival and provided him certain instructions on the day's tasks.  Those tasks included continuing to clean one of the apartments at the Residential Property and to remove the catering products and equipment from that apartment to the house on the Residential Property in order to prepare the apartment to be let if it proved structurally sound.  Lopez testified that Calabrese further instructed him to ascend to the roof of the Residential Property to install a plywood plank over a hole in the roof.  According to Lopez, the two discussed the prospect of Lopez, along with a licensed general contractor,

6

performing the roof repair cheaply and quickly, as Lopez had done previously at the Commercial Property.  Calabrese testified that he never asked Lopez to go up onto the roof in any way; that it was never his intention to have Lopez repair the roof in order to protect from the elements the catering goods being stored there; and that there was no need to fix the roof to protect the stored products and equipment because Lopez had already located dry areas in the house in which to securely store the catering business' property.  Lopez confirmed – including by marking the relevant locations on Defendant's Composite Exhibit B, ECF No. [83-4] – that he had placed the items for storage in an area of the house with no leaks, in a room separate from the part of the house containing the hole in the roof.

Between roughly 10:00 a.m. and 1:00 p.m. on April 5, 2012, Lopez cleaned the apartment and moved the catering materials from the apartment to the house, and then ascended the roof of the house to fix the hole and leak.  After installing the plywood patch, the roof gave way and Lopez fell through, sustaining a fractured vertebra, as well as other injuries.

Prior to April 5, 2012, Calabrese typically paid Lopez by check, although there was no evidence regarding from which account or on behalf of which payor those checks were typically made.  Calabrese has no records of payments made to Lopez for any work Lopez may have done for the catering business at any time.  Calabrese has no records of payments made to Lopez for work Lopez performed at the Residential Property at any time, including April 5, 2012.  Lopez produced one check made payable from Florida Caterers d/b/a Catering Services to Lopez dated February 1, 2012. This was for work performed prior to the time 519 Minnesota Street, LLC acquired the Residential Property.  *See* ECF No. [83-3] (Defendant's Exhibit A).

On April 10, 2013, Lopez filed suit against Calabrese in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida (the "Underlying Action"). Nationwide is defending Calabrese in the Underlying Action.

### III. CONCLUSIONS OF LAW

The central issue here is whether the work Lopez performed on April 5, 2012, for which Calabrese is exposed to liability, was done "with respect to the conduct of a business" within the terms of the Policy. The legal landscape regarding the purpose of a commercial general liability insurance policy and construction of such a policy has not changed since the Court's Order Denying Summary Judgment, and need not be fully restated here.

In applying the language of the Policy to the facts at bar, the Court explained:

> The Policy explicitly circumscribes its definition of an insured to exclude otherwise covered individuals and LLC members when not acting "with respect to the conduct of [their] business." That business, here, was Calabrese's catering business. The parties do not suggest that this language in the Policy is ambiguous. Indeed, courts in and outside Florida have found the phrase "with respect to the conduct of a business" facially unambiguous. *See Nova Cas. Co. v. Anderson*, 2005 WL 3336496, at *3 (M.D. Fla. Dec. 8, 2005). However, "[t]he phrase 'conduct of business' requires a focus on the purported insured's activity in determining whether the conduct of the business owner was business or personal." *Id.*

Order Denying Summary Judgment at 10. The Eleventh Circuit, applying Florida law to determine whether coverage existed under a general liability insurance policy, similarly concluded that conduct of the insured's employee (in that case, battery) was outside the scope his employment and thus not covered because the "case lack[ed] a sufficient nexus between the employee's job and his battery of another to raise even a jury question as to the scope of employment issue." *Spencer v. Assurance Co. of Am.*, 39 F.3d 1146, 1150 (11th Cir. 1994).

The same distinction applies here: the Court must decide whether Lopez's activity was performed with respect to storage of catering business property at the Residential Property, or

with respect to the separate business of renovating, in order to sell or rent the Residential Property.   Put another way, the Court must decide whether Lopez's activity had a sufficient nexus to the conduct of the catering business.  The facts here clearly show that it did not.

The evidence here demonstrates that Florida Caterers did use the Residential Property for purposes related to the conduct of its catering business – storage and parking – whether or not the property was zoned for it.  Many businesses need to store stock or property and Florida Caterers was no different.  It is also clear that Lopez did do work for the catering business, including at the Residential Property, and incluing relocating the business' stored property between the apartments and the house on the Residential Property.  That work may have been done "with respect to the conduct of [the catering] business."  But, the repair work Lopez performed on the roof of the house on the Residential Property on April 5, 2012 was not related to the catering business.  Calabrese, the insured himself, testified that there was no need to fix the roof to protect the stored products and equipment because Lopez had already located dry areas in the house in which to securely store the catering business' property.  Lopez himself admitted that he had relocated the catering material to areas of the home unaffected by the hole in the roof. Therefore, regardless of whether or not Calabrese instructed Lopez to ascend the roof and fix the leak, that activity could not have served the careering business.[1]

Because the repair to the roof was not done "with respect to the conduct of [the catering] business," there is no coverage for Lopez's claims against Calabrese or Florida Caterers in the Underlying Action and no obligation to indemnity under the Policy.  Since there is no obligation to indemnify, Nationwide has no duty under the Policy to defend Calabrese or any of his

---

[1] Even if there was some communication between the dry and secure storage area in the house and the area exposed to the hole in the roof, the connection between Lopez's activity in patching the roof and the potential for that conduct protecting the commercial products was far too attenuated to constitute activity "with respect to the conduct of [the catering] business."

affiliated entities in the Underlying Action.  *See Underwriters at Lloyds London v. STD Enterprises, Inc.*, 395 F. Supp. 2d 1142, 1146 (M.D. Fla. 2005) ("[T]the duty to defend ceases when it is shown that there is no potential for coverage, i.e., when there is no duty to indemnify."); *Fla. Physicians Ins. Co. v. G. William Lazenby, M.D., P.A.*, 576 So. 2d 794, 795 (Fla. 2d DCA 1991) (insurer duty to defend ends when proven that action is outside scope of policy coverage).

## IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED and ADJUDGED** that Plaintiff Nationwide Insurance Company of America is entitled to relief on Count I (the sole count) of its Amended Complaint, ECF No. [51].  Judgment will be entered by separate order.

**DONE and ORDERED** in Fort Lauderdale, Florida, this 20th day of March, 2015.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:
Counsel of Record

Richard Calabrese, pro se
3520 South Ocean Blvd H-202
South Palm Beach, FL 33462